Slip Op. 24-57

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| **KENT DISPLAYS, INC.,** | |
| **Plaintiff,** | **Before: Claire R. Kelly, Judge** |
| **v.** | **Court No. 20-00156** |
| **UNITED STATES,** | |
| **Defendant.** | |

**OPINION AND ORDER**

[ Granting Defendant's motion for summary judgment on Kent Displays, Inc.'s claim that its imported goods are entitled to exclusion from Section 301 duties.]

Dated: May 9, 2024

Herbert J. Lynch, Sullivan & Lynch, P.C., of North Andover, MA, for plaintiff Kent Displays, Inc.

Marcella Powell, Senior Trial Counsel, Civil Division, U.S. Department of Justice, of New York, NY for defendant United States.  Also on the brief were Patricia M. McCarthy, Director, Commercial Litigation Branch, Civil Division, and Brian M. Boynton, Principal Deputy Assistant Attorney General.  Of counsel on the brief was Justin R. Miller, Attorney-In-Charge for the International Trade Field Office, U.S. Department of Justice.

Kelly, Judge:  Before the Court are cross-motions for summary judgment.

Plaintiff Kent Displays, Inc. ("Kent Displays") protested the entry of its merchandise

subject to additional duties of 25 percent ad valorem under Section 301 of the Trade

Act of 1974's ("Section 301") (subheading 9903.88.01, Harmonized Tariff Schedule of

Court No. 20-00156                                                                                     Page 2

the United States ("HTSUS")).[1] Its merchandise had been entered in a duty-free

provision, subheading 9013.80.7000, HTSUS that was subject to the Section 301

duties, but Kent Displays claimed it received an exclusion from the duties from the

United States Trade Representative ("USTR") under subheading 9903.88.19,

HTSUS.  Kent Displays moves for summary judgment on its claim challenging the

denial of its protest of the Section 301 duties by United States Customs and Border

Protection's ("CBP").  See Pl.'s Mot. Summ. J. & Memo. L Supp'n at 1, Oct. 27, 2023,

ECF No. 20 ("Pl. Mot.").  Defendant opposes Kent Displays' motion and cross-moves

for summary judgment, claiming that CBP concluded that the imported goods are not

classified in subheading 9013.80.7000, HTSUS at all, but rather classified in

subheading 8543.70.9960, HTSUS subject to a 2.6 percent ad valorem duty but not

additional Section 301 duties.   See Def. Cr. Mot. Summ. J. & Memo. L. Supp'n &

Opp'n [Pl. Mot.] at 1, Feb. 16, 2024, ECF No. 27 ("Def. Mot.").  For the reasons that

follow, Defendant's motion is granted, and Kent Displays' motion is denied.

## BACKGROUND

On July 17, 2018, Kent Displays entered merchandise into the port of

Cleveland, Ohio under Entry DE6-5007164-5.  See Pl. Am. Stmt. Mat. Facts at ¶ 2,

Mar. 15, 2024, ECF No. 32 ("Pl. Stmt. Facts"); Def. Resp. [Pl. Stmt. Facts] at ¶ 2, Feb

16, 2024, ECF No. 27 ("Def. Resp. Pl. Facts"); Rev. Entry Summ. at 1.  The entry

---

[1] All references to the HTSUS refer to Revision 7 of the 2018 edition, the most recent
version of the HTSUS in effect at the time of Kent Displays' entry of merchandise.
See Rev. Entry Summ. at 1, Nov. 21, 2019, ECF No. 7.

consisted solely of electronic writing tablets, or eWriters, and specifically the Model No. WT16312 Dashboard ("Dashboard") sold by Kent Displays.  See Def. Stmt. Mat. Facts at ¶ 1, Feb. 16, 2024, ECF No. 27 ("Def. Stmt. Facts"); Pl. Resp. [Def. Stmt. Facts] at ¶ 1, Mar. 8, 2024, ECF No. 28-1 ("Pl. Resp. Def. Facts").

The Dashboard is "a battery powered flexible eWriter device containing a flexible pressure sensitive liquid crystal writing film."  Pl. Stmt. Facts at ¶ 8; Def. Resp. Pl. Facts at ¶ 8.  The Dashboard is a "green technology paper replacement" product, with a "bistable cholesteric reflective liquid crystal display ('LCD'), a plastic sleeve case, a small coin battery and electronics, including an electronic switch to erase the display."  Def. Stmt. Facts at ¶ 4; Pl. Resp. Def. Facts at ¶ 4.  The liquid crystal writing film component is produced in the United States and then shipped to the People's Republic of China ("PRC"), where it is assembled "into a plastic housing with a printed circuit board."  Def. Stmt. Facts at ¶ 5; Pl. Resp. Def. Facts at ¶ 5.  The Dashboard allows analog information to be written on its display by way of its internal electronics, which create an electric field.  Def. Stmt. Facts at ¶ 6; Pl. Resp. Def. Facts at ¶ 6.  Anything written on the display will remain until it is erased by pressing an electronic switch which, together with its coin battery, applies an electric field to the liquid crystal material.  Def. Stmt. Facts at ¶¶ 8–9; Pl. Resp. Def. Facts at ¶ 8–9.  The Dashboard is fully assembled when imported; it is neither presented in the piece nor presented cut to special shapes.  Def. Stmt. Facts at ¶¶ 5, 12–13; Pl. Resp. Def. Facts at ¶¶ 5, 12–13.

Court No. 20-00156                                                        Page 4

     When imported, the merchandise was entered under subheading 9013.80.7000, HTSUS, which is ordinarily duty-free.[2] See Protest at 1, Nov. 21, 2019, ECF No. 7; Rev. Entry Summ. at 1; HTSUS Ch. 90 Rev. 7.  However, imports originating from the PRC classified under that subheading are subject to a rate of duty of 25 percent ad valorem pursuant to Section 301, indicated by the annex to the federal register notice as designated by subheading 9903.88.01, HTSUS.[3] See Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 28,710 (Off. U.S. Tr. Rep. June 20, 2018) ("Section 301 Action Notice"); Pl. Stmt. Facts at ¶ 12; Def. Resp. Pl. Facts. at ¶ 12.  Section 301 duties were promulgated to combat unfair trade practices from the PRC by imposing an additional 25 percent ad valorem duty rate on certain goods identified by the USTR.  Section 301 Action Notice, 83 Fed. Reg.

----

[2]  The full article description for subheading 9013.80.7000, HTSUS at the time of entry read:

>    Liquid crystal devices not constituting articles provided for more specifically in other headings; lasers, other than laser diodes; other optical appliances and instruments, not specified or included elsewhere in this chapter; parts and accessories thereof: Other devices, appliances, and instruments: Flat panel displays other than for articles of heading 8528, except subheadings 8528.52 or 8528.62.

See HTSUS Ch. 90 Rev. 7.

[3]  The full article description for subheading 9903.88.01, HTSUS at the time of entry read: "Articles the product of China, as enumerated in U.S. note 20 to this subchapter."  See HTSUS Ch. 99 Rev. 7.

at 28,711.  Parties may, under certain circumstances, request and receive a product

exclusion from the Section 301 duties.[4]

Kent Displays paid the Section 301 duty for the subject entry, which was

liquidated on June 14, 2019, as entered under subheadings 9013.80.7000 and

9903.88.01, HTSUS.  Pl. Stmt. Facts at ¶¶ 13–14; Def. Resp. Pl. Facts at ¶¶ 13–14.

On August 2, 2018, Kent Displays filed a product exclusion request with the USTR

to exempt its Dashboards in the subject entry from the additional 25 percent ad

valorem Section 301 duties.  Pl. Stmt. Facts at ¶ 17; Def. Resp. Pl. Facts at ¶ 17.  Kent

Displays reported that its Dashboards were classified subheading 9013.80.7000,

HTSUS.  Pl. Stmt. Facts at ¶ 19; Def. Resp. Pl. Facts at ¶ 19.  The USTR responded

on July 16, 2019, and requested that Kent Displays confirm that the Dashboards were

properly classified under the HTSUS subheading listed in the initial exclusion

request.  Pl. Stmt. Facts at ¶ 20; Def. Resp. Pl. Facts at ¶ 20.  The USTR also

instructed Kent Displays to provide a revised product description for the Dashboard,

including its physical characteristics distinguishing it from other products covered by

the HTSUS subheading that would enable CBP to "consistently and correctly classify

---

[4] The USTR established procedures for interested parties to request exclusions from
Section 301 duties by filling out a product exclusion request form.  See Procedures To
Consider Requests For Exclusion Of Particular Products From [Section 301 Action
Notice], 83 Fed. Reg. 32,181, 32,182 (Off. [USTR] July 11, 2018) ("Exclusion Procs.").
The filing party must provide the 10-digit HTSUS code most applicable to the
merchandise for which the Section 301 duty exclusion was requested, as well as a
description of the merchandise's physical characteristics "that distinguish it from
other products within the covered 8-digit subheading."  Id.

the covered product at the time of entry." Pl. Stmt. Facts at ¶ 20; Def. Resp. Pl. Facts

at ¶ 20.  Kent Displays replied to the USTR's request on July 30, 2019, proposing a

product description of "flexible pressure sensitive liquid crystal flat panel display

device used as a surface for electronic writing."  Pl. Smt. Facts at ¶ 21; Def. Resp. Pl.

Facts at ¶ 21.  The USTR responded on September 26, 2019.[5]  See USTR Exclusion

Letter.

On November 21, 2019, Kent Displays' Customs Broker filed Protest No. 4101-

19-100594, challenging the classification of the subject entry under subheadings

9013.80.7000 and 9903.88.01, HTSUS, and claiming the entry was exempt from

---

[5]  The parties dispute whether the USTR advised Kent Displays that its product
exclusion request was granted.  Kent Displays claims that the exclusion was granted,
and that "flexible pressure sensitive LCD panel display devices used as a surface for
electronic writing (described in [HTSUS] 9013.80.7000) imported on or after July 6,
2018 were excluded from [Section 301 duty]."  Pl. Stmt. Facts at ¶ 22.  Defendant
denies Kent Displays' fact statement, instead citing Exhibit D: Letter from USTR,
Sept. 26, 2019, ECF No. 27-1 ("USTR Exclusion Letter"), in its response to Kent
Displays' statement of material facts.  See Def. Resp. Pl. Facts at ¶ 22.  Specifically,
the letter states:

> [T]he [USTR] has determined to grant [Product Exclusion Request
> Number   USTR-2018-0025-0282]   submitted   pursuant   to   notice
> published at 83 [Fed. Reg.] 32[,]181 . . .

> An exclusion in response to your request has been granted by
> excluding from the additional tariff's products covered by a specially
> drafted description contained in the annex to the exclusion notice.  The
> scope of the exclusion is governed by the scope of the 10-digit HTSUS
> subheadings and product description in the annex to the product
> exclusion notice, and not by the product descriptions set out in any
> particular request for exclusion.

USTR Exclusion Letter.

Section 301 duties pursuant to the USTR Exclusion Letter and should be classified in subheadings 9013.80.7000 and 9903.88.19, HTSUS.  Pl. Stmt. Facts at ¶ 23; Def. Resp. Pl. Facts at ¶ 23; <u>see also</u> Protest at 1.  Kent Displays requested that CBP reliquidate the subject entry and refund the Section 301 duty paid by Kent Displays. Pl. Stmt. Facts at ¶ 23; Def. Resp. Pl. Facts at ¶ 23; <u>see also</u> Protest at 1, Nov. 21, 2019, ECF No. 7.  On March 2, 2020, CBP denied Kent Displays' protest because the "merchandise in the instant shipment is an electrical device with an individual function that is more properly classified under HTSUS 8543.70.9960," and that "[n]o correction has been made to [HTSUS] 8543.70.9960 as the result would be adverse to [Kent displays]."[6]  Pl. Stmt. Facts at ¶ 24; Def. Resp. Pl. Facts at ¶ 24.  At the time of entry, subheading 8543.70.9960, HTSUS was subject to a 2.6 percent ad valorem duty but not additional Section 301 duties.[7]  <u>See</u> HTSUS Ch. 85 Rev. 7; <u>see also</u> Compl. at Prayer for Relief ¶ 3, July 18, 2022, ECF No. 8; Pl. Mot. at 10–11; Def. Mot. at 7.  CBP neither re-classified nor reliquidated the subject entry under subheading 8543.70.9960, HTSUS when it denied the protest.  Pl. Stmt. Facts at ¶ 25; Def. Resp. Pl. Facts at ¶ 25.

---

[6]  The full article description for subheading 8543.70.9960, HTSUS at the time of entry read: "Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof: Other machines and apparatus: Other: Other: Other."  HTSUS Ch. 85 Rev. 7.

[7]  Since the time of entry, the USTR designated merchandise within the subheading 8543.70.9960, HTSUS as subject to Section 301 duties.  <u>See</u> <u>Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation</u>, 83 Fed. Reg. 40,823 (Off. [USTR] Aug. 16, 2018).

Kent Displays filed a summons pursuant to 28 U.S.C. § 1581(a) to contest CBP's denial of the protest.  See Summons at 1–2, Aug. 18, 2020, ECF No. 1.  On July 18, 2022, Kent Displays filed its complaint in the instant action.  See Compl. at 1, 7. On October 27, 2023, Kent Displays moved this Court for summary judgment in its favor.  See Pl. Mot. at 1.  Defendant cross-moved for summary judgment on February 16, 2024, which was fully briefed on March 29, 2024.  See Def Mot. at 1; Def. Reply Br. Supp'n [Def. Mot.] at 1, Mar. 29, 2024, ECF No. 33.

## JURISDICTION AND STANDARD OF REVIEW

The Court has exclusive jurisdiction over "any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."[8]  28 U.S.C. § 1581(a).  Denied protests are subject to de novo review, i.e., "upon the basis of the record made before the court."  See 28 U.S.C. § 2640(a)(1).

The Court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  USCIT R. 56(a).  To raise a genuine issue of material fact, a party must point to sufficient supporting evidence for the claimed factual dispute to require resolution of the differing versions of the truth at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Processed Plastic Co. v. United States, 473 F.3d

---

[8] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

1164, 1170 (Fed. Cir. 2006); <u>Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.</u>, 731 F.2d 831, 835–36 (Fed. Cir. 1984).

## DISCUSSION

Kent Displays argues the Dashboard is classified under subheadings 9013.80.7000 and 9903.88.19, HTSUS, duty free and specifically excluded from Section 301 duties, because (1) neither CBP nor the Court may change the "as entered" classification of its merchandise in subheading 9013.80.7000, HTSUS; and (2) CBP improperly denied its protest requesting exclusion from Section 301 duties entitling it to classification under subheading 9903.88.19, HTSUS. Pl. Mot. at 7–10. Alternatively, Kent Displays asserts that its merchandise should be classified under subheading 8543.70.9960, HTSUS, dutiable at 2.6 percent ad valorem but not subject to Section 301 duties.[9] <u>Id.</u> at 10–11. Defendant also moves for summary judgment, contending that: (1) because Kent Displays protested the entry, liquidation was not final and CPB was within its authority to consider the classification of the Dashboard in both subheadings 9013.80.7000 and 9903.88.01, HTSUS in denying the protest; (2) the Dashboard is not classified in subheading 9013.80.7000, HTSUS, but rather under subheading 8543.70.9960, HTSUS; and (3) the Dashboard does not meet the

---

[9] Defendant agrees that if Kent Displays' first challenge is rejected, then "the Court should classify the merchandise in [HTSUS 8543.70.9960], order the reliquidation of the merchandise in that subheading, and refund 22.4 percent ad valorem." Def. Mot. at 7.

product description set forth in the exclusion notice for Section 301 duty exclusion.[10]

Def. Mot. at 11–18.  For the following reasons, Defendant's motion is granted, and

Kent Displays' motion is denied.

## I.    Finality of Classification at Entry

Kent Displays argues that this Court should order CBP to reliquidate its entry

with the "benefit of Section 301 Product Exclusion 9903.88.19."  Pl. Mot. at 11.  Kent

Displays argues that when it protested the classification of its entry, it only protested

CBP's failure to classify its merchandise as entitled to the Section 301 duty exclusion

provided in subheading 9903.88.19, HTSUS.  Id. at 7–9.  According to Kent Displays,

CBP could not change the classification of the Dashboards under subheading

9013.80.7000, HTSUS.  Id. at 8.  Rather, Kent Displays contends that CBP could only

decide whether the entry was entitled to exclusion from Section 301 duties because

(i) only the denial of the exclusion (and classification in subheading 9903.88.01,

HTSUS) was protested, and (ii) Kent Displays reasonably relied on CBPs prior tariff

treatment of imported Dashboards.  Id. at 7–9.  Given that this Court reviews the

dispute underlying a protest de novo, see 28 U.S.C. § 2640(a)(1), Kent Displays

appears to be arguing by implication that this Court is also powerless to alter the

classification of the Dashboards under subheading 9013.80.7000, HTSUS.  See, e.g.,

---

[10] The exclusion notice provided for exclusion for products that are "Flexible pressure sensitive LCD panel display devices used as a surface for electronic writing (described in statistical reporting number 9013.80.7000)."  See Exclusion Notice, 84 Fed. Reg. at 52,567.

Pl. Mot. at 6 ("The Court must reach the correct result but should start from the premise that at the most operative events, entry, liquidation, and [p]rotest denial, the [p]arties agreed or assented to the classification of [the Dashboards] under HTSUS subheading 9013.80.7000");[11] see also id. at 7–10.  Defendant contends that CBP properly considered classification of the Dashboards under subheading 9013.80.7000, HTSUS, when it denied Kent Displays' protest, and also that Kent Displays lacks a legal basis for its reasonable reliance claim.  Def. Mot. at 15–18.  For the following reasons, Kent Display's arguments are rejected.

### A.    Finality of Liquidation

Kent Displays claims that CBP was prohibited from "re-open[ing] an [e]ntry that had passed the voluntary re-liquidation period" and re-classifying the Dashboards when reviewing the protest.  Pl. Mot. at 8.  Implicit in its argument is the suggestion that the Court is similarly constrained in its review of the dispute.  See id. at 5–6 (contending that the Court should start its analysis from the premise that the parties agreed on classification under subheading 9013.80.7000, HTSUS).  Defendant argues that the liquidation was never finalized due to Kent Displays' protest.  Def. Mot. at 15–18.

---

[11]  Kent Displays submits that four previous entries of the Dashboard, spanning from March of 2017 to January of 2018, were all entered and liquidated under subheading 9013.80.7000, HTSUS.  Pl. Stmt. Facts at ¶ 15; Pl. Mot. at 9–10.  Defendant objects to Kent Displays' submission as immaterial, indicating that the entries are included in this case.  Def. Resp. Pl. Facts at ¶ 15.

When a good is imported into the United States, 19 U.S.C. § 1484 instructs the importer of record to make entry of the good using reasonable care.  Among the procedural requirements of entry, the importer must assert a classification for the merchandise under the HTSUS and declare a dutiable value.  19 U.S.C. § 1484(a).  CBP is also directed to ascertain the correct classification, value and rate, and amount of duty on imported goods in an entry under 19 U.S.C. § 1500.

Unless CBP voluntary reliquidates an entry within 90 days of initial liquidation under 19 U.S.C. § 1501, liquidations by CBP are normally final and conclusive, including a merchandise's final classification and applicable rate of duty. 19 U.S.C. §§ 1500, 1514(a).  However, liquidation is not final if an importer files a protest within 180 days of the liquidation.  See 19 U.S.C. §§ 1500, 1514(a).

Civil actions arising out of the denial of a protest must be filed with the Court within 180 days and are reviewed de novo.  See 28 U.S.C. §§ 2636(a), 2640(a)(1).  Upon review of a classification challenge, the Court first considers whether CBP's classification is correct, either independently or by comparison of competing HTSUS headings proposed by the parties.  Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984). The common meaning of a tariff term under consideration is a question of law to be decided by the Court, while the determination of whether a particular item fits within that meaning is a question of fact.  E.M. Chemicals V. United States, 920 F.2d 910, 912 (Fed. Cir. 1990).  The importer assumes the burden of demonstrating that CBP's classification was incorrect.  Jarvis Clark Co., 733 F.2d

at 876.  Generally, factual determinations by CBP are presumed correct.  Goodman

Mfg. L.P. v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995) (citing 28 U.S.C.

§ 2639(a)(1)).  However, the presumption concerns only issues of fact—not questions

of law.  Id.  The Court determines "the correct result, by whatever procedure is best

suited to the case at hand" when an imported good's classification is challenged.

Jarvis Clark Co., 733 F.2d at 878 (emphasis omitted).

  Here, the classification is not final.  CBP liquidated the subject entry on June

14, 2019, under subheadings 9013.80.7000 and 9903.88.01, HTSUS.  Pl. Stmt. Facts

at ¶ 14; Def. Resp. Pl. Facts at ¶ 14.  Kent Displays protested the subject entry's

classification on November 21, 2019—within the 180-day time constraint provided by

statute.  See Pl. Stmt. Facts at ¶ 23; Def. Resp. Pl. Facts at ¶ 23; see also 19 U.S.C.

§1514(a); 28 U.S.C. § 2636(a).  Kent Displays' protest forestalled the final liquidation

of the entry. See Cyber Power Sys. (USA) v. United States, 586 F. Supp. 3d 1325,

1331–32 (Ct. Int'l Trade 2022) (finding that the filing of a timely protest rendered

CBP's liquidation of the imported goods not final).  Congress granted this Court the

authority to find the correct classification as a consequence of Kent Display' challenge

to CBP's denial of its protest here.  See 28 U.S.C. § 2643; see also Summons at 1–2.

Jarvis Clark Co., 733 F.2d at 878.

  The parties both invoke this Court's decision in Cyber Power Systems to

support their respective positions.  See Pl. Mot. at 8 (citing 586 F. Supp. 3d 1325);

Def. Mot. at 16–17 (same).  Kent Displays offers the case to support its assertion that

"CBP does not have the right to challenge the classification of the involved goods after the voluntary re-liquidation period has expired." Pl. Mot. at 8 (citing <u>Cyber Power Sys.</u>, 586 F. Supp. 3d 1325). Kent Displays is mistaken. <u>Cyber Power Systems</u> provided that the Government lacked statutory authority to assert a counterclaim against an importer challenging the denial of a protest to seek reliquidation from CBP under a different HTSUS classification. <u>See</u> 586 F. Supp. 3d at 1330. Here, there is no counterclaim asserted by the Government that might render the narrow holding of that case applicable to Kent Displays' protest.

Defendant asserts that <u>Cyber Power Systems</u> stands for the blanket proposition that "a timely protest suspends finality for all parties," which allows CBP consider the classification of the Dashboards in evaluating Kent Displays' request for an exclusion and denying the protest. Def. Mot. at 16–17 (citing 586 F. Supp. 3d at 1331–32). It is unclear whether Defendant is arguing that CBP could re-classify merchandise beyond the time allowed for voluntary reliquidation. <u>See</u> Pl. Mot. at 7–9 (arguing that CBP lacks the power to re-classify after the time period for voluntary reliquidation). <u>Cyber Power Systems</u> specifically refrained from ruling on whether CBP could re-classify merchandise in a subheading different from the one asserted in a protest or as entered. 586 F. Supp. 3d at 1332 n.12 ("Because CBP did not reclassify the Subject Cables after reviewing the Protest, the court cannot address CBP's authority to do so here").

Similar to <u>Cyber Power Systems</u>, the Court here need not determine whether CBP could re-classify merchandise in a heading different from the one proposed by the protester when ruling on a protest.  First, CBP did not re-classify the merchandise; it considered the classification of the Dashboards in assessing whether it would be entitled to an exclusion of Section 301 duties when reviewing Kent Displays' protest.[12]  Second, the Court's mandate to reach the correct result moots the parties' dispute regarding the extent of CBP's authority to consider the classification in this case.  <u>See</u> 28 U.S.C. § 2643(b); <u>Jarvis Clark Co.</u>, 733 F.2d at 878. Therefore, the issue concerning classification of the Dashboard in subheading 9013.80.7000, HTSUS is properly before this Court.

## B.  Reasonable Reliance

Kent Displays argues the classification of its merchandise in subheading 9013.80.7000, HTSUS cannot now be changed by either CBP or this Court.  Pl. Mot. at 5–9.  Invoking equitable considerations, Kent Displays avers "importers should be able to reasonably rely upon the actions taken by CBP regarding Tariff treatment of the goods imported by the importer."  <u>Id.</u> at 10.  Defendant counters that Kent Displays offers no legal basis for its claimed reliance and asserts that eligibility for

---

[12]  As noted by Defendant, "CBP did not reliquidate the entry under subheading 8543.70.99[60], HTSUS, pursuant to 19 U.S.C. § 1515(a), which has no statutory mechanism that allows CBP to issue bills as a result of the re-classification of the merchandise upon denying a protest."  Def. Mot. at 6

Section 301 duty exclusions is governed by "the 10-digit HTSUS provision and the product description set forth in the exclusion." Def. Mot. at 18.

Kent Displays' appeal to general principles of equity is unpersuasive. In its brief, Kent Displays claims that under 19 U.S.C. § 1315, "actual uniform liquidations can establish an established and uniform practice" that might hold CBP to act consistently with prior HTSUS classifications. Pl. Mot. at 10. However, it then concedes that the requirements of a "de facto established and uniform practice are stringent," id. (citing Atari Caribe, Inc. v. United States, 16 CIT 588, 595 (1992)), and that it further "does not claim that CBP had an established and uniform practice within the context of 19 U.S.C. § 1315." Id. Thus, Kent Displays seemingly raises and then abandons any application of the doctrine, and instead argues "the essence of 19 U.S.C. § 1315 and 19 U.S.C. § 1514" warrant an importer to reasonably rely on CBP's past classifications of imported goods. See id. Kent Displays points to no authority that might support its assertion that equitable principles preclude this Court from ruling on the proper classification of the Dashboard. See id. at 9–10. Accordingly, Kent Displays' argument lacks merit and is thus rejected.

## II.   Proper Classification of the Dashboard

Defendant argues that Kent Displays' Dashboards are properly classified under subheading 8543.70.9960, HTSUS dutiable at a rate of 2.6 percent and not subject to the 25 percent ad valorem Section 301 duties of subheading 9903.88.01,

HTSUS, nor in need of the Section 301 duty Exclusion granted by the USTR.[13]  Def.

Mot. at 11–15.  Kent Displays concedes that should the Court reject its argument that

the classification in subheading 9013.80.7000, HTSUS, was final, that the

Dashboards are classifiable under subheading 8543.70.9960, HTSUS.[14]  Pl. Mot. at

10–11.  For the following reasons, Dashboards are classified under subheading

8543.70.9960, HTSUS dutiable at a rate of 2.6 percent and not subject to Section 301

duties.

The HTSUS consists of headings, which are "general categories of

merchandise," and subheadings, which "provide a more particularized segregation of

the goods within each category."  See Dependable Packaging Solutions, Inc. v. United

States, 757 F.3d 1374, 1377 (Fed. Cir. 2014).  Classification under the HTSUS is

governed by the General Rules of Interpretation ("GRIs") and, if necessary, the

Additional United States Rules of Interpretation ("ARIs"), both of which are to be

applied in numerical order.  See BASF Corp. v. United States, 482 F.3d 1324, 1326

---

[13]  In its motion, Kent Displays fails to analyze whether HTSUS 9013.80.7000 is the proper classification for the imported Dashboards.  See generally Pl. Mot.  Rather, Kent Displays concedes that should the Court reject its argument that liquidation of the subject entry was final, that its imported Dashboards are classifiable under HTSUS 8543.70.9960.  Id. at 10–11.  Nonetheless, the Court must determine whether HTSUS 9013.80.7000 or 8543.70.9960 is the correct classification for Dashboards in the subject entry.  See Jarvis Clark Co., 733 F.2d at 878.

[14]  Kent Displays indicates that at the time of import, goods classified under 8543.70.9960, HTSUS were not subject to Section 301 duties, and thus Kent Displays should be refunded for the charged amount.  Pl. Mot. at 10–11.  The parties agree that if the Court finds the merchandise classifiable under 8543.70.9960, HTSUS then liquidation should be ordered under that subheading and Kent Displays should be refunded 22.4 percent ad valorem.  Def. Mot. at 7.

(Fed. Cir. 2007); <u>BenQ Am. Corp. v. United States</u>, 646 F.3d 1371, 1376 (Fed. Cir. 2011).  GRI 1 provides, in pertinent part, that "classification shall be determined according to the terms of the headings and any relative section or chapter notes."  By design, most classification questions are answered by application of GRI 1. <u>Telebrands Corp. v. United States</u>, 36 CIT 1231, 1235 (2012), <u>aff'd</u> 522 Fed. Appx. 915 (Fed. Cir. 2013).

When determining the proper HTSUS classification of imported merchandise, the Court must "find the correct result," either independently or by comparison of competing HTSUS headings proposed by the parties.  <u>Jarvis Clark Co.</u>,733 F.2d at 878.  The meaning of a tariff term is a question of law to be decided by the Court. <u>E.M. Chemicals</u>, 920 F.2d at 912.  "The terms of the HTSUS are construed according to their common commercial meanings."  <u>Millenium Lumber Distrib. Ltd. v. United States</u>, 558 F.3d 1326, 1329 (Fed. Cir. 2009).  The "Explanatory Notes" ("ENs"), promulgated by the World Customs Organization ("WCO") to supplement each chapter of the HTSUS, are persuasive tools and "'generally indicative' of the proper interpretation of the tariff provision."  <u>Dependable Packing Solutions, Inc.</u>, 757 F.3d at 1377 (quoting <u>Lemans Corp. v. United States</u>, 660 F.3d 1311, 1316 (Fed. Cir. 2011)).

The parties present the Court with two potential HTSUS headings for classification of the Dashboards:

Heading 9013, "Liquid crystal devices not constituting articles provided for more specifically in other headings; lasers, other than laser diodes;

other optical appliances and instruments, not specified or included elsewhere in this chapter; parts and accessories thereof"

HTSUS Ch. 90 Rev. 7; Pl. Mot. at 7–10,[15] and

Heading 8543: "Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof:"[16]

HTSUS Ch. 85 Rev. 7; Def. Mot. at 13.[17]

Given the Court's obligation to reach the correct result, other chapters of the HTSUS must also be considered, regardless of whether they were submitted by the parties. A survey of the HTSUS chapters reveals that there are a handful to which the Dashboard might apply. Potential alternative chapters include Chapter 95, consisting of "Toys, games and sports requisites; parts and accessories thereof," the "Miscellaneous manufactured articles" of Chapter 96, or a different heading in Chapter 90. Of Chapter 95, the only somewhat relevant heading to the Dashboards might be 9504, including, inter alia, "Video game consoles and machines." HTSUS Ch. 95 Rev. 7. However, no party contends that the Dashboard is intended to function as a video game, or that it might be capable of operating in that manner. See

---

[15] At the time of entry, subheading 9013.80.7000, HTSUS was duty-free but designated as subject to a 25 percent ad valorem rate of duty by virtue of subheading 9903.88.01, HTSUS. HTSUS Ch. 90 Rev. 7; HTSUS Ch. 99 Rev. 7.

[16] At the time of entry, subheading 8543.70.9960, HTSUS was subject to a 2.6 percent rate of duty. HTSUS Ch. 85 Rev. 7.

[17] The Court begins its analysis by first examining and comparing the four-digit headings and any relevant section or chapter notes; after the proper heading is selected, the Court will move to the terms of the subheadings to determine the correct classification. See GRI 1, 6 (2018); see also Orlando Food Corp. v. United States, 140 F.3d 1437, 1440 (Fed. Cir. 1998).

<u>generally</u> Pl. Mot; Def. Mot.  Chapter 96 fares no better, as no heading in the chapter provides for any sort of electronic writing tablet or an electronic device that could function in that capacity.  <u>See generally</u> HTSUS Ch. 96 Rev. 7.  Application of GRI 1 renders Chapters 95 and 96 inapplicable to the Court's analysis.

A search of other headings in Chapter 90 suggests Heading 9017, HTSUS might be considered.  The heading includes items used for "Drawing, marking-out or mathematical calculating instruments (for example, drafting machines, pantographs, protractors, drawing sets, slide rules, disc calculators)," inter alia.  However, no party asserts that the Dashboard primarily serves a calculation function.  <u>See generally</u> Pl. Mot.; Def. Mot.  Heading 9023 pertains to "Instruments, apparatus and models, designed for demonstrational purposes (for example, in education or exhibitions), unsuitable for other uses, and parts and accessories thereof."  Although the Dashboard could serve a demonstrational purpose, it is undisputed that its primary function is to serve as an eWriter as an alternative for paper.  Def. Stmt. Facts at ¶ 4; Pl. Resp. Def. Facts at ¶ 4.  Thus, application of GRI 1 precludes consideration of other headings in Chapter 90, as none provide a possible means for classification of the Dashboard based upon their terms.  Accordingly, the only two headings which could apply to the Dashboards are those headings raised in the protest.

With respect to Heading 9013, HTSUS, it is located in Section XVIII of the HTSUS, covering "Optical, photographic, cinematographic, measuring, checking, precision, medical or surgical instruments and apparatus; clocks and watches,

musical instruments; parts and accessories thereof." HTSUS Section XVIII Rev. 7.

Chapter 90 in particular relates to "Optical, photographic, cinematographic,

measuring, checking, precision, medical or surgical instruments and apparatus."

HTSUS Ch. 90 Rev. 7. Heading 9013, HTSUS provides for "Liquid crystal devices

not constituting articles provided for more specifically in other headings."[18] HTSUS

Ch. 90 Rev. 7.

A liquid crystal display is an "electronic display device," consisting of liquid

crystals sandwiched between electrodes, that "operates by applying a varying electric

voltage to [the] layer of liquid crystal, thereby inducing changes in its optical

---

[18] Heading 9013, HTSUS refers to "liquid crystal devices" and does not use the term "liquid crystal displays." The Court construes the terms of the HTSUS according to their common commercial meaning. See Millenium Lumber Distrib., 558 F.3d at 1329. The ENs and the literature suggests these two terms are interchangeable. Compare EN 90.13 (2018) ("Liquid crystal devices consisting of a liquid crystal layer sandwiched between two sheets or plates of glass or plastics, whether or not fitted with electrical connections"), with Fawwaz Ulaby & Umberto Ravaioli, Fundamentals of Applied Electromagnetics 336 (Pearson Prentice Hall ed., 8th ed. 2022) https://em8e.eecs.umich.edu/pdf/tb14.pdf (last visited Apr. 30, 2024) (explaining that an LCD contains a "sandwiched liquid-crystal layer [that] is straddled by a pair of optical filters [or "grooved glass substrates"] with orthogonal polarizations"); LCD, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/LCD (last visited Apr. 30, 2024) ("an electronic display . . . that consists of segments of a liquid crystal whose reflectivity varies according to the voltage applied to them"); What Is A Liquid Crystal Display (LDC)?, Lenovo https://www.lenovo.com/us/en/glossary/what-is-lcd/ (last visited Apr. 30, 2024) ("An LCD consists of a layer of liquid crystals sandwiched between two transparent electrodes. When an electric current is applied, the crystals align to control the amount of light passing through them, creating the image you see on the screen"); see also Sharp Microelectronics Tech., Inc. v. United States, 122 F.3d 1446, 1451 (Fed. Cir. 1997) (using "liquid crystal devices" and "liquid crystal displays" interchangeably).

properties." Harry G. Walton & David Dunmur, <u>Liquid Crystal Display</u>, Encyclopaedia Britannica, https://www.britannica.com/technology/liquid-crystal-display (last visited Apr. 30, 2024). The EN for the 2018 version of the WCO ENs explains that the heading pertains to "[l]iquid crystal devices consisting of a liquid crystal layer sandwiched between two sheets or plates of glass or plastics . . . presented in the piece or cut to special shapes." EN 90.13 (2018). Thus, the plain wording and the EN together suggest that the scope of subheading 9013.80.7000, HTSUS includes liquid crystals sandwiched between plates containing electrodes that are entered on a "piece" basis or that are cut into special and particular shapes. HTSUS Ch. 90 Rev. 7; EN 90.13 (2018); <u>see also</u> <u>Sharp Microelectronics Tech., Inc.</u>, 122 F.3d at 1451 (finding that Heading 9013, HTSUS was designed to "exclude therefrom finished articles using the properties of liquid crystals," as the HTSUS Nomenclature Committee and the Harmonized System Committee of the Customs Cooperation Council intentionally left "finished articles incorporating such displays in their particular appropriate headings.").

Heading 8543, HTSUS is located in Chapter 85 of Section XVI of the schedule. Section XVI pertains to "Machinery and Mechanical Appliances; Electrical Equipment; Parts Thereof; Sound Recorders and Reproducers, Television Image and Sound Recorders and Reproducers, and Parts and Accessories of Such Articles." HTSUS Section XVI Rev. 7. Chapter 85 in particular pertains to "Electrical machinery and equipment and parts thereof; sound recorders and reproducers,

television image and sound recorders and reproducers, and parts and accessories of such articles."  HTSUS Ch. 85 Rev. 7.  The 2018 EN for heading 8543 indicates that the heading is a basket category covering "all electrical appliances and apparatus, not falling in any other heading of this Chapter, nor covered more specifically by a heading of any other Chapter of the Nomenclature" that have "individual functions." EN 85.43 (2018).  Although most of the covered merchandise "consist of an assembly of electrical goods or parts" that operate "wholly electrically," the EN states that heading 8543 also includes "electrical goods incorporating mechanical features provided that such features are subsidiary to the electrical function of the machine or appliance."  Id.

In this case, the parties do not dispute the properties of the merchandise at issue.  The parties agree that the Dashboard is an electronic writing tablet containing a "flexible pressure sensitive liquid crystal writing film" that is intended to serve as a "green technology paper replacement" product.  Def. Stmt. Facts at ¶ 4; Pl. Resp. Def. Facts at ¶ 4.  The Dashboard consists of a "bistable cholesteric reflective [LCD], a plastic sleeve case, a small coin battery and electronics, including an electronic switch to erase the display."  Def. Stmt. Facts at ¶ 4; Pl. Resp. Def. Facts at ¶ 4.  A user can draw or write on the surface of the display, which will remain without the use of power until it is erased.  Def. Stmt. Facts at ¶ 6–7; Pl. Resp. Def. Facts at ¶ 6–7.  To erase the display, the user presses an electronic switch, which "applies an electronic field to the liquid crystal material" through use of the coin battery.  Def.

Stmt. Facts at ¶ 8–9; Pl. Resp. Def. Facts at 8–9.  The size of the Dashboard spans

from 5 inches diagonal to 14 inches diagonal. Def. Stmt. Facts at ¶ 10–11; Pl. Resp.

Def. Facts at ¶ 10–11.

Here, the Dashboards are not classifiable under Heading 9013, HTSUS.  The

Dashboard is a finished product incorporating elements and characteristics that

render it more than an LCD.  It is undisputed that in addition to the LCD screen, the

dashboard features plastic housing, a battery, and an electronic switch.  Def. Stmt.

Facts at ¶4; Pl. Resp. Def. Facts at ¶4..  The liquid crystal writing film component of

the Dashboard is fully assembled "into a plastic housing with a printed circuit

board.".  Def. Stmt. Facts at ¶ 5; Pl. Resp. Def. Facts at ¶ 5.  The parties do not contend

that any additional assembly occurs after importation before Kent Displays sells the

product, only that the Dashboards are "packaged as a consumer product."  Def. Stmt.

Facts at ¶ 5; Pl. Resp. Def. Facts at ¶ 5.

Thus, as fully assembled items, the Dashboards are neither "presented in the

piece" nor "cut to special shapes" when entered.  Def. Stmt. Facts at ¶¶ 12–13; Pl.

Resp. Def. Facts at ¶¶ 12–13; see also EN 90.13 (2018).  The plain terms of heading

9013, HTSUS and the EN do not cover the characteristics of the Dashboards that

might allow for classification under the heading.  Accordingly, Kent Displays'

proposed HTSUS classification under subheading 9013.80.7000, HTSUS for its

Dashboards is rejected.

The Dashboards are properly classified under heading 8543, HTSUS.  The Dashboards are a battery-powered electronic writing tablet device.  <u>See</u> Def. Stmt. Facts at ¶¶ 1–9; Pl. Resp. Def. Facts at ¶¶ 1–9.  Containing a "bistable cholesteric reflective [LCD]," the Dashboard essentially has two stable states: one where analog information is displayed after input by a finger or stylus, created through an electric field; and one where the display is blank after the erase button is pressed.  Def. Stmt. Facts at ¶¶ 6–9; Pl. Resp. Def. Facts at ¶¶ 6–9.  A function of the Dashboard is its ability to reset the surface, which occurs through application of "an electronic field" to the LCD display enabled through use of the coin battery.  Def. Stmt. Facts at ¶ 8–9; Pl. Resp. Def. Facts at ¶¶ 8–9.  The product's purpose to serve as a replacement to paper reveals the importance of the Dashboard's erasing capability.  Def. Stmt. Facts at ¶ 3; Pl. Resp. Def. Facts at ¶ 3.

Given the importance of its ability to electronically erase its display, the Dashboard can be classified under heading 8543, HTSUS as an electronic apparatus, with individual function to write and erase without requiring paper.  <u>See</u> EN 85.43 (2018).  Heading 8543, HTSUS covers not only an apparatus that is wholly electrical, but also products where a mechanical feature is subsidiary to an electric feature. Here, the primary feature of the Dashboard is its electronic erasing function; the subsidiary feature is the display of the Dashboard on which a person writes.  <u>See</u> Def. Stmt. Facts at ¶ 3; Pl. Resp. Def. Facts at ¶ 3; <u>see also</u> EN 85.43 (2018) (including "electrical goods incorporating mechanical features provided that such features are

subsidiary to the electrical function of the machine or appliance").  Accordingly, the Dashboard is properly classified in Heading 8543, HTSUS, under the basket category of subheading 8543.70.9960, HTSUS, providing for "electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof: Other machines and apparatus: Other: Other: Other."

Subheading 8543.70.9960, HTSUS is the correct classification of the Dashboards in the subject entry.  At the time of entry, merchandise classified under subheading 8543.70.9960, HTSUS had a dutiable rate of 2.6 percent free of Section 301 duties.  Thus, Kent Displays' argument concerning the applicability of Section 301 duty exclusion to the Dashboards is moot.  Accordingly, Defendant's motion is granted, and Kent Displays' motion is denied.  The subject entry shall be reliquidated under subheading 8543.70.9960, HTSUS.

## CONCLUSION

For the foregoing reasons, the Dashboards are classified in subheading 8543.70.9960, HTSUS.  Therefore, Defendant's motion is granted, and Kent Displays' motion is denied.  The entry DE6-5007164-5 shall be liquidated under subheading 8543.70.9960, HTSUS, and Kent Displays shall be refunded 22.4 percent ad valorem of the duty paid, being the difference between the 2.6 percent ad valorem duty owed on goods classified in subheading 8543.70.9960, HTSUS and the 25 percent ad valorem duty it paid in connection with the Section 301 duties assessed on the

Court No. 20-00156                                                              Page 27

merchandise when entered under subheadings 9013.80.7000, HTSUS and

9903.80.01, HTSUS.  Judgment will enter accordingly.


                                         /s/ Claire R. Kelly
                                        Claire R. Kelly, Judge

Dated:        May 9, 2024
              New York, New York